Melissa Hellwig, Administratrix of Estate of Frank Hellwig, Deceased, Appellee, v. Lawrence Lomelino and Frank Jackson, Appellants.

Opinion filed March 1, 1941.

MARK O. ROBERTS and HUGH J. GRAHAM, JR., both of Springfield, for appellants.

WHITNEL, BROWNING, LISTEMAN & WALKER and LOUIS KLINGEL, both of East St. Louis, for appellee.

PER CURIAM.

This is a motor vehicle accident case in which plaintiff's husband, Frank Hellwig, was killed on December 18, 1939, about 11: 30 p. m. Plaintiff obtained a judgment of $6,500 on a verdict of a jury, from which judgment defendants bring this appeal.

The deceased was driving his automobile easterly from St. Louis, Missouri, where he was employed, toward his home in Illinois, over a bridge across the Mississippi river. No one was with him. The defendant Frank Jackson, as agent for the defendant Lomelino, was driving westerly on such bridge a truck loaded with shelled corn, and the 2 vehicles collided with each other. The lights on both vehicles were lighted.

That portion of the bridge used for vehicle traffic was about 30 feet in width. There was no mark to indicate the center of the roadway. On each side of the bridge there was a sidewalk. On the inner side of each sidewalk, that is the side toward the center of the bridge, there was a curb. From 200 to 400 feet west of the place of the accident there was a curve in the

road, but easterly from the place of the accident the road was straight for quite some distance.

The only other vehicle traffic consisted of a large trailer truck proceeding westerly, which trailer truck the defendant Frank Jackson passed shortly before the collision; also one other truck following Frank Jackson, which other truck was being driven behind the trailer truck by Ralph Jackson, as agent for Lomelino. Frank and Ralph Jackson were brothers.

No occupant of the trailer truck testified and the absence of any such witness was not accounted for by either side.

The widow of the deceased testified that she and the deceased lived on the Illinois side of the river; that the deceased was aged 46; that his health was in perfect condition; that he was steadily employed as chief yard clerk by a railroad and had been so employed for 22 years; that his earnings were around $180 a month; that he began work at nine in the morning and quit when he was finished in the evening; that he was a very industrious man and lived with his family; that he had six children, the youngest being aged 11 and the oldest being aged 25, and that he always provided for his family and was always at home when he was not at work. No objection to, or motion to strike, this testimony was made.

Benjamin Phillips, the only eyewitness who testified for the plaintiff, testified that he was walking easterly on the south sidewalk of the bridge and was about 75 feet away when he heard a loud crash and saw the truck and the automobile come together; that ''the seeing was after the hearing''; that when the 2 cars came together the automobile was on the ''right hand side, the south side . . . and the truck was close to the south side, more on the south side than the north side''; that as soon as the truck hit the auto the rear end of the auto swung around against the south curb; that after the collision the truck stood still a few

seconds and was then driven about 100 feet westerly and to the north curb.

Two police officers, as witnesses for the plaintiff, testified that they arrived at the scene of the accident about 11 or 11:20 p. m., after the deceased had been taken away; that the automobile was then facing north, one stating that the rear end of the automobile was on the south sidewalk, the other that the rear end of the automobile was backed into the south curb; one stating the truck was about 100 feet west of the automobile with its front wheels about 6 feet and its back end about 12 feet from the north curb, the other that the truck was about 150 or 250 feet west of the automobile and 2 or 3 or 4 feet from the north curb, and that the truck was parallel with such curb, but that he could not tell whether the front and rear wheels were the same distance from the curb.

For the defense eight witnesses testified, only three of whom were eyewitnesses. The defendant Frank Jackson, who was the driver of the truck which took part in the collision, being incompetent under the statute, was not permitted to testify.

K. Ennis testified that he was riding in the cab with and on the right side of Frank Jackson; that they passed a trailer truck, a semitrailer truck with a large body, about 200 or 300 feet from the place of the accident, and were going about 20 miles per hour; that after passing the trailer Frank Jackson pulled into his own lane of traffic and was driving about 2 or 3 feet from the north curb; that he first noticed the deceased's car 300 or 400 feet away when it came around the curve to the west; that such car leaned a good deal as it came around the curve and came down the center of the road, about in the center of the road, at a speed of about 50 miles per hour; that he "didn't actually see the car hit;" that "I never paid any attention to this car after it got up to us until after it hit us; we

stopped and I didn't know at the time or didn't think about him hitting us; I knew something had happened for the shelled corn was running out''; that after the impact he next saw the automobile when it was about 50 or 60 feet east of the truck and on the south side of the road, the rear end being against the curb; that the truck did not move more than 10 or 15 feet after the impact; that in so doing it went straight ahead and stopped 2 or 3 feet from the north curb, and was not thereafter moved. He further testified on direct examination that ''the corn was spilled between the car and the truck, mostly out in the center of the road at the place of impact, where the car was with the truck.''

Ralph Jackson, a brother of Frank Jackson, testified that he was driving the second truck; that the trailer truck was ''just in front,'' about 100 feet ahead, of his truck when he noticed the car of the deceased coming around the curve; that in so doing such car leaned over and was traveling 50 or 60 miles an hour down the center of the pavement and hit the corner of the Frank Jackson truck at a time when such truck was between 2 and 3 feet from and parallel to the north curb and traveling about 20 or 25 miles per hour; that he had pulled out so he could see past the trailer; that the Ralph Jackson truck was about 100 feet behind the trailer and 6 feet from the right-hand side of the road, and the Frank Jackson truck was about 100 feet ahead of the trailer when the accident happened, and the trailer did not obstruct Ralph Jackson's view of the Frank Jackson truck; that after the impact the Frank Jackson truck kept moving for about 10 feet, when it came to a final stop and was not thereafter moved; that he tried to move such truck and it wouldn't move; that there were rubber marks where the dual wheels of the Frank Jackson truck had slid, which marks were ''straight up the road west''; and 2 or 3 feet from the north curb and about 5 feet in length; that he had a

view of the accident even though 100 feet back from the trailer and 6 feet farther to the left than the trailer.

K. Clark testified that he was riding with Ralph Jackson; that after Frank Jackson passed the trailer he could not see at all and did not see the collision; that the deceased's car was about 10 feet behind Ralph's truck when Ralph stopped; that the Frank Jackson truck was then standing about 2 or 3 feet from the north curb; that Ralph tried to move the Frank Jackson truck, but such truck would not move under its own power and such truck was not moved after the accident.

A. Maiher testified that he arrived at the scene about 12 or 12:30 at which time the Frank Jackson truck was parked between 2 and 3 feet from the north curb, the wheels being about the same distance from such curb.

R. House testified he arrived at the scene about 12 o'clock and towed away the Frank Jackson truck with a tow truck; that when he so arrived the Frank Jackson truck was parked parallel with and 2 or 3 feet from the north curb.

H. Blumberg testified that he worked on the Frank Jackson truck as a mechanic and it would not have been possible to move such truck on its own power, because the rear wheel was locked.

C. Enloe testified that he left the scene before the deceased was taken to the hospital; that at that time the front and rear wheels of the truck were about a foot from the north curb.

The testimony of the witness A. Williams is not material to the issue.

The foregoing is a fair statement of all the material facts.

The defendants contend that the trial court erred in denying defendants' motion to direct a verdict of not guilty at the conclusion of all of the evidence, on the ground that the plaintiff did not make out a prima

facie case of actionable negligence on the part of the defendants, or a prima facie case of due care on the part of the deceased.

In reviewing such action of the trial court we cannot weigh the evidence, but must assume as true that evidence which is most favorable to the plaintiff. Our function is limited strictly to determining whether there is or is not evidence legally tending to prove a prima facie case of negligence and due care. (*Ziraldo v. W. J. Lynch Co.,* 365 Ill. 197.) The effect of all modifying or countervailing evidence must be left out of view. (*Frazer v. Howe,* 106 Ill. 563.) Whether a plaintiff was exercising reasonable care or guilty of contributory negligence is ordinarily a question of fact for a jury. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. (*Ziraldo v. W. J. Lynch Co., supra.*) Contributory negligence cannot be defined in exact terms and unless it can be said that the action of a person is clearly and palpably negligent, it is not within the province of the court to substitute its judgment for that of a jury. (*Blumb v. Getz,* 366 Ill. 273.) Due care may be proven by circumstantial as well as by direct evidence. (*Chicago, B. & Q. R. Co. v. Gregory,* 58 Ill. 272.)

Assuming as true the evidence most favorable to the plaintiff, then such evidence in our opinion reasonably and fairly tends to prove that at the time of the collision the automobile of the decedent was being driven on the southerly half of the roadway, where normally and in the exercise of reasonable care the deceased had the right to drive such automobile, and fairly and reasonably tends to prove that a substantial portion of the truck was also being driven on the southerly half of such roadway in the path of the deceased's automobile, a position where normally and in the absence of explanation such truck could not be properly driven.

Defendants do not attempt to justify or explain such position of the truck, but contend that the truck was within a few feet of the north curb. It therefore follows that if the truck was on the south half of the roadway in the path of the automobile it was improperly in such position. We believe this makes a prima facie case of negligence on the part of the defendants, the question as to the truth of the testimony being one of fact for the jury.

On the question of due care on the part of the defendants, the evidence shows, or reasonably and fairly tends to show, that the decedent was in good health, steadily employed and of good habits, and that he was driving toward his home from his work on that part of the roadway where normally he had the right to be. The law only requires the highest proof of which a case is susceptible or that can reasonably be made. (*Chicago, B. & Q. R. Co. v. Gregory,* 58 Ill. 272.) In *Illinois Cent. R. Co. v. Nowicki,* 148 Ill. 29, 34, the court said, "The argument on behalf of appellant proceeds upon the theory, that inasmuch as the burden of proof is upon the plaintiff to show due care on the part of deceased, there must be testimony tending to prove that he did certain things usually done by one about to cross a railroad track, and which generally should be done, as, looking and listening for approaching trains. If such proof were necessary in cases of this kind, a recovery could seldom, if ever, be had, however inexcusable the negligence of the defendant. The law is not so unreasonable."

It is our opinion that the plaintiff made out a prima facie case of due care on the part of the deceased.

Defendants next contend that the verdict is manifestly and palpably against the weight of the evidence. Where there is a contrariety of evidence and the testimony by a fair and reasonable intendment will authorize a verdict, even though it may be supported by a lesser number of witnesses, a court of review will not

set it aside (*Carney v. Sheedy*, 295 Ill. 78). After a careful review and consideration of all of the evidence we cannot say that the verdict is manifestly and palpably contrary to the weight of the evidence.

Complaint is made of the giving of plaintiff's instruction number 4, the only objection being that such instruction contains verbatim a portion of sections 1 and 2 of the Injuries Act, and in so doing uses the words "company or corporation." In our opinion there was no error in this instruction. (*Deming v. City of Chicago*, 321 Ill. 341.)

Defendants next complain that they were prevented on cross-examination from showing that the witness Phillips took approximately $50 from the pocket of the deceased while taking the deceased to the hospital. There was no error in such ruling of the court. (*People v. Green*, 292 Ill. 351; *Addison v. People*, 193 Ill. 405.)

The judgment of the circuit court is affirmed.

*Affirmed.*