**Ernest Barrows, Appellee, v. Midwest Transfer Company of Illinois, Appellant.**

Gen. No. 46,466.

First District, First Division.

January 31, 1955.

Released for publication February 23, 1955.

Michael A. Gerrard, and Lord, Bissell & Brook, all of Chicago, for appellant; Michael A. Gerrard, Gordon R. Close, and Richard E. Mueller, all of Chicago, of counsel.

Raymond L. McClory, and Louis P. Miller, both of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Ernest Barrows filed a complaint against the Midwest Transfer Company of Illinois to recover damages for personal injuries suffered because of negligence and willful and wanton misconduct. The case went to the jury on both the negligence and willful and wanton allegations, which returned a general verdict for the plaintiff assessing damages at $30,000. Motions for judgment notwithstanding the verdict and for a new trial were overruled and judgment was entered, to reverse which this appeal is prosecuted.

■ Where there is a general verdict for the plaintiff in a case submitted to the jury on both the theories of negligence and willful and wanton misconduct it must be sustained by evidence that the defendant's conduct was willful and wanton and that rule is appli-

cable to the instant case. Greene v. Noonan, 372 Ill. 286; Trumbo v. Chicago B. & Q. R. R. Co., 389 Ill. 213. Defendant maintains that the verdict in finding that it was guilty of willful and wanton misconduct is against the manifest weight of the evidence. The plaintiff says that the evidence sustains his allegations that defendant was guilty of willful and wanton misconduct.

On Thursday, March 9, 1950, at about 11:30 a. m. the plaintiff was operating his 1941 Buick Special automobile in an easterly direction on 66th street and James Kivett was operating a tractor-trailer for the defendant in a northerly direction on Pulaski road in Chicago. It was daylight, the weather was clear and the streets were dry. Pulaski road runs north and south and is 40 feet in width and 66th street runs east and west and is 30⅓ feet wide. The block between 66th and 67th streets is 650 to 700 feet in length. Neither is a through street at that point. Pulaski road is considered a heavily traveled thoroughfare and 66th street is considered a side street. There was nothing to obstruct the view of either driver. The place of impact was approximately in the southeast quadrant of the intersection. Plaintiff's automobile spun around and flew through the air, coming to rest 75 to 120 feet from the place of impact. The force of the collision caused the tractor-trailer to jackknife and skid into a steel lightpole located on the northeast corner of the intersection. As a result of the impact plaintiff was seriously injured and his passenger was killed. Plaintiff, defendant's driver and three disinterested witnesses testified that they saw the occurrence. Only the plaintiff testified as to any wrongful conduct of the defendant. He testified that as he approached Pulaski road he slowed up and glanced both ways; that he had a clear view for about 100 feet in both directions; that there were no buildings built right up to the pedestrian walks; and that he slowed up because he "realized" it was Pulaski road, glanced to his right, put the car in first speed

and glanced to his left. To his right he saw a truck coming through the intersection at 67th street in full motion. At that time plaintiff could not judge the speed of the truck in miles per hour. To his left he saw a car approximately a block and a half away. He stopped momentarily just long enough to look and to drop into first gear and then pulled into Pulaski road. As he pulled into Pulaski road the truck was 300 or 400 feet away. He kept watching the truck and as he got to the center line of Pulaski road it was approximately 200 feet away and seemed to be coming fast. It was at that time that he first judged the speed of the truck in miles per hour. His best judgment of the speed of the truck from the time it was 200 feet away until the impact was 60 or 70 miles per hour. The passenger and plaintiff said something to the effect, "Look at him, he really is approaching us." At that time the truck was 50 feet or less away and the front of plaintiff's automobile was 5 feet west of the east curb-line, as extended, and the rear of his 15-foot automobile was in the center of Pulaski road which is 40 feet wide. He tried to gain speed. He realized the truck was coming very fast and kept watching "him." It seemed that right before the moment of impact the driver cut to the east curb-line rather than going behind him and struck the right rear door of his car and that the angle that the truck was heading at the moment of impact would be on a line with the right rear door and the opposite left front corner of the automobile. At the time of the impact the rear of his automobile was east of the original path of the truck, the front of his car being 5 feet east of the east curb-line. Plaintiff was knocked unconscious by the impact. The highest speed of his car in crossing Pulaski road was between 8 and 10 miles per hour. He believed he was going 10 miles an hour at the moment of the impact. On cross-examination plaintiff admitted he was familiar with the rules of the road and with the rule as to a vehicle approaching from the

195

right at an intersection. He stated that he was casually familiar with the area and that he knew that Pulaski road was a busy street, having crossed it many times before. He pulled out into Pulaski road in first gear and remained in first gear all the way across the intersection. By the time he reached the middle of the intersection he was going 4 or 5 miles per hour. Just as he started to cross the middle of the intersection the truck was 200 feet away traveling between 60 and 70 miles per hour, about 8 feet from the east curb of Pulaski road. He had new brakes put on the car two days before and they were in excellent working condition. He supposed he had occasion to stop his car going at 5 miles per hour, but just prior to the accident he did not apply his brakes at any time.

The driver of the truck testified that the maximum speed of the fifth direct transmission unit he was driving was 50 to 55 miles an hour on level ground and that at the time of the occurrence he was proceeding 18 to 25 miles an hour and was driving in third gear. He did not blow his horn when he saw plaintiff's automobile and plaintiff's automobile came right across at full speed and went into the side of the tractor. The truck driver "hit" his brakes just before the collision. He said that at the time the truck came in contact with the lightpost it was going a couple of miles an hour and that the tractor moved 3 or 4 feet after the first contact with the lightpost. The other witnesses, except the plaintiff, corroborated the truck driver. Plaintiff was the only witness who testified that the truck was going over 25 miles an hour. His version of the occurrence is contradicted and uncorroborated by the witnesses and also by photographic evidence.

Plaintiff's version of the occurrence is that he was in the intersection when the tractor-trailer was 200 feet away, that he was almost across the intersection proceeding at 10 miles an hour when the defendant's truck traveling 60 to 70 miles an hour suddenly turned to the

196

east crashing into the right rear door or center of the automobile and knocking the car for a distance of 75 to 120 feet through the air into an adjacent yard. The willful and wanton misconduct asserted is the speed of the truck and the turning to the right into plaintiff's car. The defendant's version, from the testimony of the driver and disinterested witnesses, is that the tractor-trailer was entering the intersection of 66th street and Pulaski road when the plaintiff's car was 8 to 10 feet west of Pulaski road, that the plaintiff did not stop or slow down for the thoroughfare but came out of the side street at a rapid speed striking the left front fender of the truck with its right front fender and slid across the front of the truck, then spun and hurtled into the adjacent yard. The examination of photographic evidence supports the version of the occurrence as described by the disinterested witnesses and the truck driver. It is undisputed that after the collision plaintiff's vehicle was in an adjacent yard facing in a southwesterly direction and that the tractor was against the lightpost on the northeast corner of the intersection in an east by north direction and that the trailer continued in a due north direction.

If the tractor-trailer had been moving at 60 or 70 miles an hour the initial force and direction of the heavy trailer would have carried the trailer and tractor far past the intersection. The tractor hit and bent the post, but at the claimed speed at that short distance from the post the heavy equipment would have taken the post along with it as it continued far north of the northeast corner. A tractor ramming a lightpost at the speed claimed would have been damaged far more extensively than the damage shown in the exhibits. The testimony of the three disinterested witnesses, the defendant's driver and the photographic evidence are all consistent with one another but inconsistent with the testimony of plaintiff. A careful consideration of the record convinces us that the finding that defendant was

197

guilty of willful and wanton misconduct is against the manifest weight of the evidence.

Defendant asserts that the evidence viewed in its aspect most favorable to the plaintiff shows that he was guilty of willful and wanton misconduct which proximately contributed to bring about his injuries in attempting to cross Pulaski road in the face of a visible known danger. It points out that as plaintiff pulled into Pulaski road the truck was 300 or 400 feet away and that as he reached the center line of that road the truck was 200 feet away and coming "pretty fast"; that his judgment of the speed of the truck at that time was 60 or 70 miles an hour; that he did not apply his brakes at any time; that the truck had traveled 500 feet from the time he first saw it coming through the 67th street intersection until he, plaintiff, reached the center of the intersection, a distance of 20 to 25 feet; that despite this knowledge the plaintiff drove forward across the middle of Pulaski road and into the path of known danger; that when the front of the car was 5 feet west of the east curb the tractor was 50 feet away; that then for the first time plaintiff tried to gain speed to remove himself from the danger in which he knowingly, willfully and deliberately placed himself; and that he proceeded east 10 feet more until his car was 5 feet east of the east curb when he claims the tractor-trailer hit his car in the right rear door. Defendant argues that accepting plaintiff's highly improbable testimony that he deliberately proceeded into such known danger from a position of safety had he stopped, and after placing himself in such a known danger to fail to attempt to get out of the oncoming vehicle's path until the vehicle is 50 feet away, constitutes contributory willful and wanton misconduct as a matter of law. While there is much force in defendant's argument, we cannot hold as a matter of law that the evidence viewed in its aspect most favorable to the plaintiff, establishes that he was guilty of willful and wanton misconduct which

proximately contributed to cause his injuries. We agree, however, with defendant's contention that the verdict in effect finding the plaintiff not guilty of contributory willful and wanton misconduct is against the manifest weight of the evidence.

Defendant states that the court erred in refusing to permit two tendered witnesses to testify as to a conversation they had with plaintiff six days after the occurrence for the reason that the proffered testimony directly attacked the credibility of plaintiff's testimony and corroborated defendant's position that plaintiff was unable to recall the events relating to the occurrence. On the basis of evidence presented by plaintiff that he sustained a serious brain injury and that his memory is impaired, the defendant contended on the trial and now that the plaintiff is unable to remember the facts of the accident, and that in cases of serious brain injury such as was sustained by him the person injured would suffer a condition known as retrograde amnesia, defined as the loss of memory of events just prior to a brain injury or after a period of loss of consciousness. Defendant says "that the plaintiff does suffer from retrograde amnesia is the only explanation for the fact that plaintiff's version of how the accident happened is directly contrary to all other evidence, both testimonial and physical." In support of defendant's contention it called plaintiff under section 60 [Ill. Rev. Stats. 1953, ch. 110, § 184; Jones Ill. Stats. Ann. 104.060] and asked if he recalled a visit from two men, Arthur Lauer and Joseph Brandes, the latter a court reporter, who visited his hospital room on March 15, 1950. Plaintiff testified that he was unable to recall any such visit and that defendant's Exhibit 9 for identification, a court reporter's statement taken from him by Lauer and Brandes, did not refresh his recollection. The trial judge refused to permit Lauer and Brandes to testify as to the conversation between themselves and plaintiff. The offer of proof shows that on

199

March 15, 1950 plaintiff was unable to remember anything about the day of the accident or any of the events which occurred a couple of days prior to the accident.

■ ■ Admissions or statements material to the issue by a party to a suit are always competent and admissible when offered by the opposite party. Stump v. Dudley, 285 Ill. 46; Van Meter v. Gurney, 240 Ill. App. 165; 4 Wigmore on Evidence (1940 3rd Ed.) sec. 1048. We think that the court erred in refusing to permit Lauer and Brandes to testify concerning the conversation with plaintiff on March 15, 1950.

■ Defendant states that the court erred in giving two instructions on behalf of plaintiff with respect to willful and wanton misconduct of the defendant inasmuch as these instructions failed to include the essential element of proximate cause. The plaintiff insists that no error was committed in giving these instructions because they dealt with only one issue in the case, were not peremptory and that it was unnecessary that they contain all of the elements necessary to support a verdict. The criticism leveled at these instructions is supported by the authorities. In view of our statements on the other points presented it is unnecessary to say whether we consider the giving of the two instructions to be reversible error.

■ ■ Finally, defendant urges that the trial court erred in refusing to permit cross-examination of the plaintiff with respect to the distance within which his automobile could be stopped when it was moving at 5 miles per hour. The driver of an automobile is qualified to testify as to the distance required to stop at a given speed. He is familiar with the brakes of his vehicle and their operation at different speeds. Plaintiff comments that it is commonplace that before a driver can bring his car to a stop he must become aware of the necessity of stopping, translate that awareness into an impulse to do something, and that after the

200

brain has signaled to the driver's foot that a stop must be made the foot must be removed from the throttle and applied to the brake pedal, and that some appreciable time must elapse before any pressure can be exerted on the brake. Plaintiff also states that the questioner did not make it clear whether he was interested in learning what the stopping distance would be if the driver were not aware that the stop must be made, or whether he was referring to the distance traveled after the brake was applied. This argument might contain merit as applied to an expert witness endeavoring to estimate the stopping distance required by a particular person in a particular situation, but as to a driver who is familiar with the operation of his automobile and who is able to take into consideration his reaction and stopping time and with reasonable certainty to give an accurate estimate as to his stopping distance under the specific conditions, the argument is not valid. We think that the court should have permitted cross-examination of the plaintiff with respect to the distance within which his automobile could be stopped.

For the reasons stated the judgment of the superior court of Cook county is reversed and the cause is remanded with directions to proceed in a manner not inconsistent with these views.

*Judgment reversed and cause remanded with directions.*

FRIEND and NIEMEYER, JJ., concur.