RUTH RYAN, Plaintiff-Appellant, *v.* LEONARD McEVOY, Defendant-Appellee.

(No. 57770;

First District (4th Division)—June 26, 1974.

Thomas Donnelly, of Chicago (William J. Harte and Michael E. Mc-Nulty, of counsel), for appellant.

Peterson, Ross, Rall, Barber & Seidel, of Chicago (Robert G. Schloerb, John P. Moe, John W. McCullough, and Ellen J. Kerschner, of counsel), for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is an action by the plaintiff, Ruth Ryan, to recover for injuries to her person sustained as a result of the alleged negligent operation of an automobile by Leonard McEvoy, the defendant. The trial court severed the issue of damages from the issue of liability and a verdict was rendered in favor of the defendant on the liability issue. Plaintiff appeals from the judgment entered thereon.

Plaintiff argues before this court that the overwhelming weight of the evidence established defendant's liability and that there were so many prejudicial errors committed in the course of the trial that she could not possibly have received a fair trial.

The plaintiff, Ruth Ryan, testified that at about 2 A.M. on April 9, 1967, she was seated behind one John McGrath on a motorbike which Mr. McGrath was operating. They were proceeding north on Komensky Avenue in Chicago and approaching the intersection of 62d Street. Defendant McEvoy was operating an Oldsmobile which was eastbound on 62 Street with a passenger named George Twist. There were no stop signs or stop lights at the intersection of 62d Street and Komensky Avenue. The streets were wet due to drizzling or rainy weather conditions. Plaintiff testified she saw defendant's vehicle coming from the left and that it was approximately 30 or 40 feet away when she first saw it. The car made contact with the motorbike, striking her on the left side. The motorbike had one large seat with two bars on the rear and a place for the feet of the driver and the passenger. Plaintiff had one hand around a metal bar on the seat and one hand around McGrath's waist just prior to the impact. McGrath, whom she had known prior to the night in question, was taking her home from a restaurant. Earlier that night she and McGrath had been visiting at her brother's house for 2 or 3 hours.

John McGrath testified for the plaintiff that prior to the collision he was driving the motorbike about 15 miles per hour. He first saw the car's lights when it was at a distance of approximately 30 feet. He estimated the speed of the car at about 40 miles per hour. The defendant's left front fender hit the rear of the motorbike. The impact took place in the center of the intersection.

The defendant, Leonard McEvoy, testified that he saw the lights of the motorbike and applied his brakes. His car was stopped for several seconds when the motorbike hit it, damaging it slightly between the right front fender well and headlight. When he first observed the motorcycle it was about 40 feet from the intersection and he was about 20 to 25 feet away from the intersection. He was travelling at a speed of about 10 or 15 miles per hour because of the weather conditions. He said he had

reached the center line of the intersection when his car came to a stop before the collision.

■■ As we view the evidence it is our opinion that this was a very close case. The plaintiff's driver was proceeding to the right of the defendant when the motorbike entered the uncontrolled intersection. The plaintiff's version is that the defendant's car struck the left side of the motorbike and her left leg. The defendant's version is that his car was at a standstill when the motorbike ran into it. Where the question of liability is sufficiently close that the jury might reasonably have returned a verdict for either party, the trial must be conducted in an orderly manner and be free from any error that is likely to influence the jury. (See *Mattice v. Klawans*, 312 Ill. 299, 143 N.E. 866.) We will thus consider first whether any such error was committed.

During the trial, Officer George Betts, who was a member of the Traffic Division of the Chicago Police Department, testified as a witness for the plaintiff that he investigated the accident. He arrived at the scene and then went to the Holy Cross Hospital. At the hospital he said he talked to the two drivers of the vehicles involved, and, after refreshing his recollection as to their identity, the following occurred:

"Q. Who was present when you had the conversation with Mr. McEvoy?

A. I could not honestly say whether I talked to the two drivers in front of them. I do remember that I talked to both of them in the hospital.

Q. Would you tell us what conversation you had with Mr. McEvoy concerning this accident?

MR. MOE [Defendant's attorney]: To which I object.

THE COURT: Sustained, unless he remembers who was present.

MR. DONNELLY [Plaintiff's attorney]: Well, if he can't remember, he can use it as an admission from the Defendant."

THE COURT: He can't use it. The objection is sustained."

The plaintiff urges that the policeman's testimony was admissible as proof of an admission by the defendant and that its exclusion was error. We agree. It is fundamental that admissions or statements material to the issue by a party to a suit are always competent and admissible when offered by the opposite party. (*Stump v. Dudley*, 285 Ill. 46, 120 N.E. 481.) Defendant claims, however, that the trial court properly rejected the officer's testimony regarding the conversation because no proper foundation was laid. We are aware of a rule which requires that, in order to obviate the objection of unfair surprise, when evidence of a contradictory statement by an ordinary witness is to be proffered as a

prior self-contradiction, the witness must be warned when on the stand, and asked with certain specificity as to time, place, and person, whether he made the statement to be proffered. (IIIA Wigmore, Evidence, § 1025 at 1020, and ff. (Chadbourn rev. 1970); see *People v. Henry*, 47 Ill.2d 312, 265 N.E.2d 876.) But this type of foundation requirement is generally not applicable to a proffer of the admissions of a party. (IV Wigmore, Evidence, § 1051 at p. 12ff. (Chadbourn rev. 1972); see *Buck v. Maddock*, 167 Ill. 219, 47 N.E. 208.) And we are unable to conceive of any other reasonable theory that would completely exclude evidence by a disinterested objective witness of voluntary, material admissions of a party against his interest which might tend to support the other side's theory of the case. See *Casey v. Burns*, 7 Ill.App.2d 316, 325, 129 N.E.2d 440, 445; see also *Barrows v. Midwest Transfer Co.*, 4 Ill.App.2d 191, 124 N.E.2d 20.

■■ Defendant more vehemently argues that plaintiff's failure to make an offer of proof revealing the materiality and relevancy of the policeman's testimony precludes a determination by this court whether its exclusion was prejudicial. We concede that it might better have served the plaintiff's purposes to make an offer of proof as to the substance of the proffered testimony. But we also note that under various circumstances, where evidence is erroneously excluded at trial, the failure to make an offer of proof is not necessarily fatal to a claim of prejudice. (See *Giddings v. Williams*, 336 Ill. 482, 168 N.E. 514; *Miller v. Chicago Transit Authority*, 78 Ill.App.2d 375, 223 N.E.2d 323; *Mack v. Davis*, 76 Ill.App. 2d 88, 221 N.E.2d 121; *Schusler v. Fletcher*, 74 Ill.App.2d 249, 219 N.E.2d 588.) In any event, the basis of the trial judge's ruling excluding the evidence did not relate to the relevancy or materiality of the evidence being submitted, but rather to the alleged lack of a foundation, and we have held this ruling error. Whether this error would be sufficiently prejudicial, standing alone, to require a new trial, in the absence of an offer of proof as to the substance of the testimony, we need not rule on definitively. We hold that other errors committed at trial, which we will discuss forthwith, in conjunction with the error committed here, require that the plaintiff be given a new trial.

The record discloses that during cross-examination of the plaintiff by defense counsel the following colloquy occurred:

> "MR. MOE: Now, I don't mean to embarrass you, ma'am, are you a lady that has a drink once in a while?
> A. Socially.
> Q. And did you have anything to drink that night?
> A. No.
> Q. Where had you been that night?

A. I was at my brother's home.

Q. How long were you there?

A. Two or three hours.

Q. And what were you doing while you were there?

A. We were visiting.

Q. And was Mr. MaGrath there with you?

A. He came—He was over there, yes.

Q. Did he have anything to drink, ma'am, while he was there?

A. No.

Q. How long was he there at the place?

A. A couple of hours or so.

Q. Have you ever had a drink with Mr. McGrath?

A. Socially."

No evidence whatsoever was offered by the defendant to prove that either plaintiff or McGrath had been drinking that evening or that either were under the influence of liquor at the time of the accident. In *Gordon v. Checker Taxi Co.,* 334 Ill.App. 313, 318-19, 79 N.E.2d 632, 634, where on cross-examination of plaintiff defense counsel attempted to impeach the plaintiff with respect to a former accident and examinations with doctors treating her for the former accident, without any attempt to connect it up later with any substantive proof, it was stated:

"Innuendoes involved in such questions are sometimes more damaging than an effort to prove the impeaching facts. When no witness is offered to impeach plaintiff and, therefore, no opportunity for cross-examination presented, the prejudicial effect springing from such questions cannot always be overcome, and results in an unfair trial to a plaintiff."

We agree with the plaintiff that the questioning regarding drinking was improper in the absence of any supporting evidence of intoxication. *Clarke v. Rockford,* 79 Ill.App.2d 336, 224 N.E.2d 679; *Miller v. Chicago Transit Authority,* 3 Ill.App.2d 223, 121 N.E.2d 348.

These innuendoes regarding drinking, in the instant case were aggravated by the following cross-examination of witness McGrath:

"MR. MOE: Q. Mrs. Ryan was holding on to your waist, is that correct?

A. Yes.

Q. Were you wearing any kind of a helmet?

A. No.

Q. By the way, are you a married man?

A. Yes.

MR. DONNELLY: Objection, Your Honor.

THE COURT: Objection overruled.

MR. MOE: Q. And how long did you know Mrs. Ryan before this accident?

A. About—I don't know—six months, a year, something like that, roughly."

■■■ While we agree with the defendant, that the latitude to be allowed on cross-examination of witnesses rests largely within the discretion of the trial court, it seems clear that any right in Illinois to impeach a witness by showing specific bad conduct is limited. (*Chicago City Ry. Co. v. Uhter,* 212 Ill. 174, 72 N.E. 195; *Dimick v. Downs,* 82 Ill. 570; *People v. Gibson,* 133 Ill.App.2d 722, 272 N.E.2d 274; *Hellwig v. Lomelino,* 309 Ill.App. 369, 33 N.E.2d 174.) Although defendant argues that the questioning was justified in order to show the relationship between the witness and the party calling him and thus to establish any possible bias or prejudice of the witness affecting his credibility, it is difficult to conceive of how an inquiry into the witness' marital status was essential to that endeavor. Certainly the moral character of the plaintiff or McGrath was not an issue in the case, and it had no bearing on the truth or falsity of their testimony regarding how the accident occurred. We feel the cross-examination was designed to discredit plaintiff as an immoral person in the eyes of the jury and, coupled with the improper questions directed to plaintiff discussed above, carried with it such prejudice as to prevent any possibility of a fair trial on the merits.

■■ We next note, for the benefit of the trial court upon remand, that plaintiff's testimony that defendant's automobile was moving "at a rather fast speed" was erroneously stricken from the record. The speed of vehicles is generally recognized as one of those subjects about which a layman has sufficient "experiental capacity" to express an opinion (II Wigmore, Evidence, § 571, at 669 ff. (3rd ed. 1940); VII Wigmore, § 1977, at 134 ff. (3rd ed. 1940)), and in Illinois, a witness who is unable to approximate speed in terms of specific miles per hour will be allowed to estimate the speed of a vehicle in terms of "fast" or "slow." (*McKenna v. Chicago City Ry. Co.,* 296 Ill. 314, 129 N.E. 814; *Hester v. Goldsbury,* 64 Ill.App.2d 66, 212 N.E.2d 316.) Other errors are assigned, but we do not think it necessary to discuss them.

For the reasons stated, the judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

ADESKO, P. J., and JOHNSON, J., concur.