(No. 78482.—

JOANNE WATKINS, Indiv. and as Special Adm'r of the Estates of Joseph Hansen and Howard Hansen, Deceased, Appellant, v. NEIL SCHMITT *et al.*, Appellees.

*Opinion filed April 30, 1996.*

HEIPLE, J., joined by NICKELS, J., specially concurring in part and dissenting in part.

Barry A. Spevack, of Monico, Pavish & Spevack, and Steven J. Seidman, all of Chicago, for appellant.

William V. Johnson and William A. Geiser, of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan and Mindy Kallus, of counsel), for appellees Neil Schmitt & Meyer Material Co.

Leo J. Sullivan III, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellees Sharon Bracher & Fox Lake School District No. 114.

JUSTICE HARRISON delivered the opinion of the court:

This case arises out of an automobile collision that took place on Route 12 and the Lake Vista Terrace intersection in Fox Lake, Illinois, on November 28, 1990, at approximately 2:25 p.m. Joseph and Howard Hansen, brothers and high school students, died when the red Ford Escort Joseph was driving was struck by a cement truck. Joanne Watkins, mother and as special administrator of the estates of Joseph and Howard Hansen, brought a wrongful death action naming the following defendants: Neil Schmitt, driver of the cement truck;

Meyer Material Company, owner of the cement truck; Sharon Bracher, driver of a school bus; and Fox Lake School District No. 114, owner of the school bus. Watkins alleged that the negligence of defendants caused the injuries and deaths of her sons. The trial court barred a deputy sheriff from testifying as plaintiff's accident reconstruction expert at trial. The deputy sheriff calculated the speed of defendant Meyer's cement truck just prior to the accident and concluded that Schmitt was speeding. After this testimony was barred, the trial court granted summary judgment in favor of all defendants in this case. The appellate court affirmed the circuit court's judgment. No. 2—93—1300 (unpublished order under Supreme Court Rule 23). We allowed plaintiff's petition for leave to appeal. 145 Ill. 2d R. 315.

Plaintiff now raises three issues for our review: (1) whether the deputy sheriff's accident reconstruction testimony as to speed should be admissible; (2) whether the evidence of skid marks and questions concerning Schmitt's exercise of due care raised genuine issues of material fact precluding summary judgment in favor of Schmitt and Meyer Material; and (3) whether evidence of the school bus stopping for several minutes in the right-hand lane of Route 12, blocking the view of other traffic, raised factual questions as to the bus driver's negligence. For the reasons which follow, we hold that the trial court did not abuse its discretion in barring Officer Jansky from giving expert reconstruction testimony at trial, but reverse the trial court's decision granting summary judgment in favor of defendants.

The facts of this case reveal that Joseph and Howard Hansen died when a Meyer Material Company cement truck struck the red Ford Escort Joseph was driving. The accident took place at the intersection of Route 12 and Lake Vista Terrace Road. Route 12 runs north-south and Lake Vista Terrace Road runs east-west. On

the day in question, the Meyer cement truck, driven by Schmitt, traveled north in the left-hand lane of Route 12. The Fox Lake school bus, driven by Bracher, also traveled north, but in the right-hand lane of Route 12. Immediately before the accident, the school bus was making or was soon to make a right-hand turn from Route 12 onto Lake Vista Terrace Road. The school bus was required to stop at railroad tracks located approximately 30 feet east of Route 12 at the intersection in question. The railroad tracks ran parallel to Route 12 and crossed Lake Vista Terrace Road very close to the intersection. Thus, when Bracher stopped at the tracks, the rear end of the bus remained in the right-hand lane of Route 12, either straight or at an angle. The cars traveling north in the right-hand lane of Route 12 were stopped behind the school bus for some time. There was testimony that this school bus was stopped, blocking the right-hand lane of Route 12, for at least two minutes.

During these events, Joseph and Howard Hansen had been traveling westbound on Lake Vista Terrace Road. Both Bracher and Ronald McGill, a student monitor on the bus, noticed the red Escort traveling westbound and heading toward the Route 12 intersection. McGill knew the Hansen brothers from high school and noted that Joe Hansen's speed seemed appropriate and normal. McGill further testified that he observed Joe drive over the railroad tracks, come to a complete stop at the Lake Vista Terrace stop sign, and then begin "inching out" into Route 12. When the Escort inched out into the intersection and passed the bus, it was struck by the Meyer Material cement truck. The cement truck, driven by Schmitt, was uninhibited by a stop sign and clearly had the right-of-way.

Schmitt also gave his account of the events leading up to the accident. Originally, Schmitt was in the right-hand lane of Route 12 and all the other traffic merged

into this lane because of road construction. Schmitt testified that next, all traffic had to merge into the left-hand lane until eventually, further down Route 12, both lanes were open. Schmitt noted that at this point, the rest of the traffic went back into the right lane, but he stayed in the left. Just before the Lake Vista Terrace Road intersection, Schmitt saw the bus stopped in the right-hand lane with its stop arm out and the rear lights flashing a couple of blocks ahead of him. After the bus retracted its stop arm, turned off its lights, and moved toward Lake Vista Terrace Road, Schmitt accelerated and approached the bus.

Schmitt testified that the first time he saw the red Escort, the bus was in the process of making a right-hand turn and was stopped right before the railroad tracks. Schmitt further stated that immediately prior to the accident, the rear of the bus was still in the right-hand lane of Route 12, blocking virtually all of that lane. Schmitt testified that he had not seen the red Escort coming down Lake Vista Terrace. He recalled that as he came around the bus, he only saw the red Escort a second before impact. Schmitt described the speed of the Escort just prior to impact as "awful fast" and claimed that the Escort appeared to be accelerating. Schmitt stated that at this time, he grabbed the steering wheel to brace himself and applied the brakes with all of his weight, locking them up and sending the truck into a skid. The bumper of the cement truck struck the red Escort just behind the left front wheel on the driver's side at a point in line with the westbound lane of Lake Vista Terrace Road. After striking the Escort, Schmitt's cement truck skidded north of the intersection and spun to a rest in the middle of the southbound turning lane. Schmitt claimed that just prior to the accident, his speed only reached between 20 and 30 miles per hour due to the traffic and road construction on Route 12.

Witnesses are not in agreement as to the exact position of the bus when it stopped at the intersection and the length of time which the bus was stopped. Bracher, the school bus driver, recalled that prior to executing the turn onto Lake Vista Terrace, she did not stop the school bus solely on Route 12. McGill, the student monitor on the bus, agreed that Bracher did not stop on Route 12, but merely slowed down to make the turn. Bracher further testified that she only turned the caution lights on as she made the turn onto Lake Vista Terrace. McGill corroborated her testimony that the red flashing lights and stop arm were never activated. Bracher claimed that she did not come to a stop until she turned the corner onto Lake Vista Terrace. She then made the required stop at the railroad tracks, opened the bus door, looked down the tracks, closed the door, turned off the caution lights, and then proceeded down Lake Vista Terrace. Bracher acknowledged that when she stopped the bus at the railroad tracks, the rear and side of the bus were protruding out into Route 12. McGill agreed with this testimony and recalled that three-quarters of the bus was blocking Route 12 when it stopped at the railroad tracks in question. Both Bracher and McGill stated that the bus was only stopped long enough for Bracher to open the bus door and look down the tracks to make sure that no trains were coming. McGill estimated that the stop lasted approximately a minute or two. The bus then proceeded down Lake Vista Terrace and no one on the bus heard or saw the collision.

In contrast, another witness, Donald Rankin, who was driving behind the school bus in a one-ton pickup truck, agreed with Schmitt that at some point the bus was stopped solely on Route 12, prior to turning onto Lake Vista Terrace Road. He remembered the bus stopping parallel with the other lane of Route 12, with its

nose just inside Lake Vista Terrace, and with its stop arm out and red lights flashing. Rankin further recalled that after some time, the school bus retracted its stop arm and turned off the lights. However, according to Rankin, after the bus retracted its stop arm and turned off its lights, it still remained stopped in the right-hand lane for well over a minute and possibly up to two minutes or longer. Rankin commented that it seemed like an abnormally long period of time for a school bus to be stopped with its lights off before it eventually started to move. He estimated that, in total, the school bus was stopped blocking Route 12 for at least two minutes. Rankin stated that, clearly, the school bus would have blocked the vision of both the driver of the cement truck and the driver of the Escort.

Rankin also observed the cement truck and Escort prior to the accident and saw the impact take place. He stated that when he was stopped behind the school bus originally, he checked his rearview mirror and saw the cement truck about two-tenths of a mile down the road in the left-hand lane. Rankin recalled that after the school bus had taken down its stop arm and turned off its lights, the cement truck approached and eventually passed his vehicle. Although there are varying reports as to which lights flashed and whether the stop arm was activated, no claim is made by anyone that Schmitt illegally passed the bus when the stop arm was extended or flashing lights showed.

Rankin further testified that he first spotted the red Escort going west on Lake Vista Terrace. He claimed that the red Escort was moving fast. He noted that as the Escort pulled into the intersection, he only saw a blur of red in front of the school bus just prior to the impact. Rankin also questioned whether the Escort actually stopped at the stop sign prior to entering the intersection of Route 12 and Lake Vista Terrace Road.

However, he acknowledged that he could not actually see whether the Escort stopped because his view of the stop sign was blocked by the school bus. In contrast, as stated, McGill, the school bus monitor, had a clear view of the Escort at the stop sign. McGill testified that he was positive the Hansen vehicle came to a complete stop and then began "inching" out into the intersection.

Evidence was also presented regarding the speed of the Meyer cement truck. As stated, Schmitt testified that when both lanes of Route 12 opened up, he remained in the left lane and the rest of the traffic moved over to the right. He recalled that he was driving between 20 and 30 miles per hour, and that he accelerated when he saw the lights quit flashing and the stop arm come in on the school bus. Schmitt passed the bus and then slammed on his brakes a second before impact. Rankin also estimated that the speed of the Meyer cement truck was between 20 and 30 miles per hour. He further stated that the cement truck had no opportunity to avoid the collision. Another eyewitness, Walter Simpson, was driving directly behind the Meyer cement truck and witnessed the collision. Simpson estimated that he was driving approximately 50 feet or three or four car lengths behind the cement truck prior to impact. He testified that just prior to the collision he was traveling between 30 and 35 miles per hour and thought that he was moving about the same speed as the cement truck. Simpson based this estimate on the fact that the cement truck was not leaving him far behind and he was not catching up close to the truck. Thus, two eyewitnesses and the driver of the cement truck testified that the truck was traveling between 20 and 35 miles per hour.

In contrast to this eyewitness testimony, the record in this case also includes the filed deposition of Lake County Deputy Sheriff John Jansky. Officer Jansky calculated that the cement truck was speeding at the

time of the accident. Officer Jansky testified that prior to investigating the accident in question, he had taken week-long courses in on-the-scene accident investigation and vehicular dynamics at the Northwestern Traffic Institute. He further stated that since 1984, he has performed various calculations at accident scenes and testified in several criminal cases. However, Officer Jansky has never taken the test for state certification in accident reconstruction. Plaintiff argues that Officer Jansky's testimony as to the speed of the cement truck should be admissible as expert testimony by an accident reconstructionist.

Officer Jansky arrived on the scene approximately 30 minutes after the accident took place. First, he noted that Route 12 ordinarily had a 45-mile-per-hour speed limit in the area of the accident. However, on the day of the accident, 35 miles per hour was the last posted speed limit due to repair and reconstruction work at a bridge south of the Lake Vista Terrace intersection. Officer Jansky measured the skid marks left by the cement truck at the time the skid began in order to calculate the speed of the truck. He testified that the skid marks left by the Meyer truck indicated that the speed of the truck when the skid began was a minimum of 52.8 miles per hour, and 36 miles per hour at the time of impact with the Hansen vehicle. According to Officer Jansky, the rear wheels of the cement truck left skid marks a total distance of 124 feet, 59 feet before the collision and 65 feet after the collision. Officer Jansky estimated that at the time Schmitt slammed on his brakes, throwing the truck into a skid, the front bumper of the Meyer truck was 29 to 34 feet (or possibly 5 feet less) from the point of impact with the red Escort. He also stated that the truck's tires had the proper depth of tread and the brakes worked properly. In his traffic accident report, Officer Jansky concluded that the cause of this accident

was a combination of the excessive speed of the Meyer cement truck, the failure of the red Escort to remain stopped at the stop sign until the intersection was clear, and obstruction of vision caused by the school bus.

As stated, the trial court barred Officer Jansky from giving expert reconstruction testimony as to the speed of the Meyer cement truck. Ultimately, the trial court granted summary judgment in favor of all defendants, and the appellate court affirmed. The appellate court reasoned that expert reconstruction testimony is only admissible when it is necessary to rely on knowledge and the application of scientific principles beyond the ken of the average juror. The court held that jurors could draw their own conclusions as to the speed of the cement truck based on eyewitness testimony from Rankin, Simpson, and Schmitt. The court further reasoned that without Officer Jansky's speed calculations, there were no factual questions regarding Schmitt's speed, and Schmitt and Meyer Material were entitled to summary judgment.

The purpose of summary judgment is not to try a question of fact, but to determine whether any genuine issues of triable fact exist. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517 (1993). A motion for summary judgment should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994). It is well established that in determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). In addition, any evidence which would be inadmissible at trial cannot be consid-

ered by the court in support of or opposition to a motion for summary judgment. See *Wiszowaty v. Baumgard*, 257 Ill. App. 3d 812, 819 (1994).

We first address the issue of whether the trial court erred in barring Officer Jansky from testifying as plaintiff's accident reconstruction expert at trial. Plaintiff argues that the trial court improperly barred Jansky's expert testimony and that his testimony raised a genuine issue of material fact as to Schmitt's speed. Plaintiff urges this court to follow the trend among appellate districts which recognizes eyewitness testimony as just one factor in the determination of whether accident reconstruction testimony should be admitted. See *Augenstein v. Pulley*, 191 Ill. App. 3d 664, 681 (1989). Plaintiff further argues that several appellate cases measure the admissibility of expert testimony by the standard of whether the evidence will aid the jurors' understanding of the facts. See *Augenstein*, 191 Ill. App. 3d at 680-81; *Ketchum v. Dura-Bond Concrete, Inc.*, 179 Ill. App. 3d 820, 831 (1989). Plaintiff contends that Officer Jansky's calculations of speed would aid a jury's understanding of what factors contributed to the accident in this case. Plaintiff further claims that the notion that an eyewitness can estimate speed more accurately than an accident reconstruction expert is a dubious one, especially in light of the "smooth power of modern automobiles." Thus, plaintiff concludes that under this modern trend, Officer Jansky's calculations of speed were admissible.

In response, defendants argue that estimates of automobile speed have traditionally been considered a matter of common observation rather than expert opinion. Defendants note that this court addressed the admissibility of an accident reconstructionist's speed calculations in *Peterson v. Lou Bachrodt Chevrolet Co.*, 76 Ill. 2d 353, 359 (1979), and held that "the speed of an

automobile is not a matter beyond the ken of the average juror." *Peterson*, 76 Ill. 2d at 359. Defendants further point out that the court in *Peterson* reasoned that jurors can draw their own conclusions on the basis of eyewitness testimony as to speed and, thus, testimony of speed calculations should not be admitted. *Peterson*, 76 Ill. 2d at 359.

This court very recently addressed issues concerning expert reconstruction testimony and whether such testimony may be admitted when there is also eyewitness testimony in *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542, 546 (1995). In *Zavala*, plaintiff, the only eyewitness, lost two fingers in a drill press accident and claimed that her fingers were cut and not pulled off. Defendant's reconstruction expert, Dr. Caulfield, testified that the only way the accident could have occurred was if the glove plaintiff wore became caught up in the reamer, a piece of equipment located in the drill press which plaintiff operated. *Zavala*, 167 Ill. 2d at 543-44. Thus, Dr. Caulfield concluded that plaintiff's fingers were pulled, and not cut, because the reamer "presented only an entanglement, not a cutting, hazard." *Zavala*, 167 Ill. 2d at 544.

In determining whether the trial court properly admitted Dr. Caulfield's expert reconstruction testimony, this court held that "expert reconstruction testimony is proper, even where there is an eyewitness, if what the expert offers is 'knowledge and application of principles of science beyond the ken of the average juror.'" *Zavala*, 167 Ill. 2d at 546, quoting *Plank v. Holman*, 46 Ill. 2d 465, 471 (1970). This court went on to explain that whether to admit expert reconstruction testimony depends upon the "usual concerns of whether expert opinion testimony is appropriate generally." *Zavala*, 167 Ill. 2d at 546. In concluding that Dr. Caulfield's testimony was proper, this court reasoned that

his opinion as to how the accident happened focused on human factors and the reamer's operation, and such information was clearly beyond the ken of the average juror. *Zavala*, 167 Ill. 2d at 546.

We recognize that under our reasoning in *Zavala*, the existence of eyewitness testimony is not the conclusive factor in determining whether accident reconstruction testimony is admissible. Therefore, in the present case, the fact that there were three eyewitnesses who could testify as to the speed of the cement truck does not amount to an absolute bar to expert reconstruction testimony. Instead, we look at whether in addition to eyewitness testimony, expert reconstruction testimony would be needed to explain scientific principles to a jury and enable it to make factual determinations.

The expert testimony at issue in this case is distinguishable from the testimony admitted in *Zavala*. The expert in *Zavala* was able to determine that because a reamer spins at a high velocity and has no cutting surface it could not cut but could only pull off a user's fingers. Unlike estimating the speed of a car, this is not the type of knowledge that a lay person could obtain after watching a drill press in operation. This type of analysis requires knowledge of the mechanics of a reamer and an application of scientific principles to determine that it could only cause certain types of injuries to its users. In contrast, any lay person with a reasonable opportunity to observe and ordinary experience with moving vehicles can estimate the speed of a car. Unlike *Zavala*, in this case a jury would be presented with sufficient evidence, through eyewitness testimony, to make its own factual determinations.

Furthermore, as stated by defendants, when this court was previously faced with the issue of whether expert testimony as to speed was admissible, it held that automobile speed was not a matter beyond the ken

of the average juror. *Peterson*, 76 Ill. 2d at 359. We adhere to the court's position in *Peterson*. It is well established that speed is recognized "as a subject about which a layman can express an opinion." See *O'Brien v. Walker*, 49 Ill. App. 3d 940, 949 (1977), citing *Ryan v. McEvoy*, 20 Ill. App. 3d 562, 568 (1974). In general, when a witness is familiar with the speed of a vehicle he may testify to the speed he observed, and if a witness is unable to estimate miles per hour he may state it as fast or slow. *Delany v. Badame*, 49 Ill. 2d 168, 178 (1971). A lay person is not required to have any specialized knowledge in engineering or to perform scientific calculations to estimate the speed of an automobile.

In this case, three eyewitnesses who had a reasonable opportunity to observe the accident, and sufficient driving experience, gave their speed estimates all within a 20- to 35-mile-per-hour range. Even without defendant Schmitt's testimony, there are two disinterested eyewitnesses who had a fair opportunity to observe Schmitt's speed. Furthermore, regardless of the admissibility of his opinion as to speed, Officer Jansky may testify as to the skid marks and any other physical evidence he observed at the accident scene. The speed estimates from these three eyewitnesses, along with the evidence of skid marks, clearly formed a sufficient basis upon which a jury could make its own conclusions. We therefore conclude that the trial court did not err in barring Officer Jansky from giving expert testimony in this case. In reaching this conclusion, we do not consider Officer Jansky's qualifications as a reconstruction expert, as that issue was not raised by the defendants and is unnecessary to our holding.

Even though the court was correct in finding Officer Jansky's speed testimony inadmissible, we nevertheless believe that the court erred in granting summary judgment in favor of Schmitt and Meyer Material. Plaintiff

points out that even if Officer Jansky is barred from expressing an opinion on Schmitt's speed, no impediment precludes him from testifying that the cement truck left 124 feet of skid marks. According to plaintiff, this physical evidence of extensive skid marks could have been used by a jury to deduce that Schmitt was speeding.

We agree that Officer Jansky should be allowed to testify as to any physical evidence he observed at the scene of the accident. The skid marks left by the cement truck could not be considered expert testimony. See *Nolan v. Elliott*, 179 Ill. App. 3d 1077, 1087 (1989). Evidence of skid marks is simply physical evidence which Officer Jansky observed as an eyewitness at the scene of the accident. Furthermore, in construing the evidence liberally in favor of the plaintiff, we believe that evidence of 124 feet of skid marks does present a factual question as to whether Schmitt was speeding. Evidence of skid marks, "though not conclusive, could be considered some evidence of excessive speed." See *Penzin v. Stratton*, 26 Ill. App. 3d 475, 480 (1975). In *Young v. Patrick*, 323 Ill. 200, 202 (1926), this court held that skid marks "positively identified by the witness as being the marks made by the rear wheels of the car involved, tended to establish excessive speed."

In this case, according to Officer Jansky's eyewitness testimony, the rear wheels of the cement truck slid approximately 59 feet before the collision and 65 feet after the collision. Evidence of such lengthy skid marks raises factual questions as to whether Schmitt's speed was possibly greater than the estimates given by the eyewitnesses. In addition, according to deposition testimony, it is unclear whether the speed limit on Route 12 was the usual 45 miles per hour or 35 miles per hour because of road construction that day. Schmitt also conceded that he remained in the left-hand lane of Route 12 although

all the other traffic returned to the right. He further stated that he accelerated past the school bus once the bus retracted its stop arm and turned off its warning lights.

In light of the evidence of 124 feet of skid marks, the possible 35-mile-per-hour speed limit, and Schmitt's testimony that he accelerated in the left-hand lane past stopped traffic, a jury could conclude that Schmitt was speeding. Given that eyewitnesses estimated Schmitt's speed at between 20 and 35 miles per hour, if a jury concluded these were low estimates, the possibility would exist that Schmitt violated this 35-mile-per-hour speed limit.

Furthermore, regardless of what the applicable maximum speed limit is, drivers are still required to drive at a speed which is reasonable and proper for traffic conditions. 625 ILCS 5/11—601 (West 1994). In addition, drivers have a duty to decrease their speed when approaching any sort of special hazard present with respect to other traffic. 625 ILCS 5/11—601 (West 1994). In this case, a large school bus was stopped for an extended period of time, blocking an intersection and obstructing the view of traffic on Route 12 and Lake Vista Terrace Road. A traffic condition such as this creates a special hazard because it interferes with the way motorists drive and the flow of traffic. Schmitt was required to adjust his driving accordingly. This would have entailed slowing down when approaching the school bus and overtaking it. Schmitt testified that prior to approaching the bus, he saw it stopped a couple of blocks ahead of him with its lights flashing and stop arm out. A jury could conclude that when a driver is faced with such a hazard he is required to slow down and approach the bus and backed-up traffic with caution. The evidence presents factual questions as to whether Schmitt exercised the appropriate caution when approaching this intersection.

Defendants Schmitt and Meyer Material assert, as an alternative ground for entering summary judgment in their favor, that Joseph Hansen, the driver of the Escort, was greater than 50% negligent as a matter of law. This is the same argument defendants raised before this court in a "Motion To Dismiss Appeal As it Relates to Joseph Hansen." This court denied defendants' motion to dismiss the appeal on these grounds. We again reject defendants' argument. We believe that since genuine issues of material fact were raised regarding Schmitt's negligence, determining the relative degree of fault of each party should be left for the fact finder. See *King v. Petefish*, 185 Ill. App. 3d 630, 641 (1989).

We therefore conclude that even without Officer Jansky's expert reconstruction testimony, genuine issues of material fact exist regarding plaintiff's claim of negligence against Schmitt and Meyer Material. Accordingly, we reverse the trial court's order granting summary judgment in favor of Schmitt and Meyer Material.

The final issue we address is whether defendants Sharon Bracher and the Fox Lake School District were entitled to summary judgment. Plaintiff claims that the actions of Bracher, the school bus driver, were a contributing factor in causing the accident. She argues that blocking the roadway and the view of other drivers violates the rules of roadway safety. Specifically, plaintiff cites to section 11—1416 of the Illinois Rules of the Road (625 ILCS 5/11—1416 (West 1994)), which provides that "No person shall wilfully and unnecessarily hinder, obstruct or delay, or wilfully and unnecessarily attempt to delay, hinder or obstruct any other person in lawfully driving or traveling along or upon any highway within this State ***." 625 ILCS 5/11—1416 (West 1994). Plaintiff contends that Bracher violated this safety statute and breached her duty to the other drivers involved in the collision.

We agree that the evidence raised factual questions as to whether Bracher improperly blocked the roadway for an extended period of time. Rankin, the eyewitness who was traveling directly behind the bus, testified that the bus was stopped solely on Route 12, prior to making any turns. Schmitt also stated that when he was approaching the bus, it was stopped on Route 12. Furthermore, both Schmitt and Rankin believed that the bus had its stop arm activated and lights flashing prior to turning off Route 12. According to Rankin, the school bus remained stopped on Route 12 for an abnormally long period of time even after it retracted the stop arm and turned off the lights. He estimated that the bus was stopped for at least two minutes and believed that it blocked the vision of both the driver of the Escort and the driver of the cement truck.

This testimony is in conflict with the account of events given by both Bracher and McGill. However, in deciding a summary judgment motion, a court must not attempt to weigh the evidence. See *Cnota v. Palatine Area Football Ass'n,* 227 Ill. App. 3d 640, 647 (1992). Furthermore, we must construe the evidence liberally in favor of the nonmoving party. We believe that, in doing so, genuine issues of fact are raised as to whether the school bus was stopped for an unreasonable period of time in an improper position. Stopping a large school bus in a regular lane of traffic for an extended period of time would create a hazardous condition on the roadway. In making such a stop, the school bus obstructed the view of other motorists traveling on Route 12 and Lake Vista Terrace Road and inhibited the free flow of traffic on these roads. Creating such a hazardous road condition could have been a contributing factor in the cause of this accident. After construing the evidence liberally in favor of the plaintiff, we conclude that genuine issues of material facts exist regarding plaintiff's claim of

negligence against Bracher and the Fox Lake School District.

For the reasons stated, we reverse the judgment of the appellate court, reverse the judgment of the circuit court granting summary judgment in favor of all defendants, and remand this cause to the circuit court for further proceedings consistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE HEIPLE, specially concurring in part and dissenting in part:

My sole disagreement with the majority is its refusal to allow the testimony of the accident reconstruction expert as to the speed of the cement truck. Relying on *Peterson v. Lou Bachrodt Chevrolet Co.*, 76 Ill. 2d 353 (1979), the majority opines that since the speed of a vehicle is not beyond the ken of the average juror, and since eyewitnesses are available to testify, then the testimony of the accident reconstruction expert is not necessary. 172 Ill. 2d at 204-05. As this court previously pointed out in *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542, 546 (1995), quoting *Plank v. Holman*, 46 Ill. 2d 465, 471 (1970), "expert reconstruction testimony is proper, even where there is an eyewitness, if what the expert offers is 'knowledge and application of principles of science beyond the ken of the average juror.' " Just so.

We have here a matter of physics involving weight, mass, measured skid marks, weather, pavement friction and surface conditions, all of which lend themselves to scientific analysis from an expert relative to the speed of the cement truck. While eyewitnesses to a moving vehicle can and should be allowed to testify as to its speed, the reliability of such testimony is problematical. To deny the supplementation of such testimony with the testimony of a qualified scientific expert interferes with

the truthseeking function of a trial. Accordingly, I specially concur and dissent as noted.

JUSTICE NICKELS joins in this partial special concurrence and partial dissent.