# Illinois Official Reports

## Appellate Court

---

*Groeller v. Evergreen Healthcare Center LLC*,
**2015 IL App (1st) 140932**

---

| | |
|---|---|
| Appellate Court Caption | WILLIAM M. GROELLER, JR., Individually and as Administrator of the Estate of Eleanor Groeller, Plaintiff-Appellant, v. THE EVERGREEN HEALTHCARE CENTER LLC, d/b/a Evergreen Healthcare Center, Defendant-Appellee (Boulevard Healthcare Management, LLC, a/k/a Boulevard Healthcare, LLC, Defendant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-0932 |
| Filed | April 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-2821; the Hon. Thomas E. Flanagan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Peter R. Coladarci, of Peter R. Coladarci, Ltd., of Chicago, for appellant.<br><br>Robert Marc Chemers, John J. Walsh III, and Scott L. Howie, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellee. |

JUSTICE HOWSE delivered the judgment of the court, with opinion.
Justices Ellis and Cobbs concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiff, William M. Groeller, Jr., individually and as administrator of the estate of Eleanor Groeller (his mother), deceased, filed a six-count complaint against defendants, Evergreen Healthcare Center LLC, doing business as Evergreen Healthcare Center (Evergreen or the nursing home), and Boulevard Healthcare Management, LLC (also known as Boulevard Healthcare, LLC). Eleanor, then 90 years old, was injured in an accident at her home and broke her right arm and both thumbs. After being treated at Northwestern Hospital, she was discharged to Evergreen, a nursing home. At Evergreen, Eleanor's physical and mental condition worsened. Eleanor was returned to Northwestern Hospital, where she died. At the conclusion of the trial, the trial court instructed the jury on both institutional negligence (particularly the duty of a healthcare institution) and on professional negligence (particularly the duty of a professional nurse).

¶ 2      The jury returned a verdict in favor of defendant. Plaintiff appeals, arguing the trial court committed reversible error in giving the jury both instructions. Specifically, plaintiff argues the trial court committed reversible error in failing to determine what law applies and instructing the jury accordingly. Separately, plaintiff argues the jury's verdict should be reversed and the cause remanded for a new trial because the trial court's instructions were contradictory and prejudiced him.

¶ 3      For the following reasons, we affirm.

¶ 4                                    BACKGROUND

¶ 5      The complaint alleged that Eleanor Groeller was a resident of Evergreen nursing home from November 17, 2007 until December 1, 2007, following her discharge from Northwestern Hospital after treatment for a broken right arm and two broken thumbs. The complaint alleged that upon her admission to Evergreen, Eleanor required assistance for eating, dressing, bathing, administration of medication, walking, and moving from bed to chair. Sometime after being admitted to Evergreen, Eleanor developed pressure ulcers. The complaint alleged that while in Evergreen Eleanor was in a sad or anxious mood and that by November 26, 2007, she suffered from (a) frequent bowel incontinence, (b) multiple daily episodes of bladder incontinence, (c) pressure sores damaging underlying tissue, and (d) partial loss of skin or a shallow skin crater or both. Evergreen discharged Eleanor on December 1, 2007. The complaint alleged that when she was discharged, Eleanor had pressure ulcers and had deteriorated mentally. Northwestern Hospital readmitted Eleanor and diagnosed her with lethargy or failure to thrive, infection, and an E. coli infection. Eleanor died on December 14, 2007, two weeks after being discharged from Evergreen Healthcare Center.

¶ 6      Plaintiff's amended complaint (complaint) alternatively alleged that Evergreen Healthcare Center, LLC (hereinafter defendant) and Boulevard Healthcare Management, LLC (Boulevard), owned, operated, or managed Evergreen Healthcare Center and was the licensee

of Evergreen Healthcare Center. Boulevard is not a party to this appeal. The complaint alleged, in relevant part, that defendant violated the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2008)) (count I); negligence resulting in a survival claim (count II); and negligence resulting in a wrongful death claim (count III).

¶ 7 Plaintiff's complaint for a violation of the Nursing Home Care Act alleged that defendant, "by its owners, officers, managers, agents, employees, and servants," owed Eleanor a duty to comply with the Nursing Home Care Act. Plaintiff alleged that defendant, "individually, and by and through its owners, officers, managers, agents and employees," violated the Nursing Home Care Act by (a) failing to properly attend and care for Eleanor, (b) failing to properly assist Eleanor, (c) failing to properly care for Eleanor's deteriorating mental status, (d) allowing pressure sores to develop, (e) allowing pressure sores to increase in severity and size, and (f) otherwise violating statutory duties in Eleanor's "care, monitoring and attendance." Plaintiff's complaint alleges that under the Nursing Home Care Act, defendant is liable to any resident for the intentional or negligent acts or omissions of their agents or employees which injure the residents. Plaintiff alleged that as a direct and proximate result of one or more of defendant's violations of the Nursing Home Care Act, Eleanor suffered harm resulting in physical and mental injuries which resulted in her death.

¶ 8 Plaintiff's negligence counts alleged that defendant, "by and through its owners, officers, managers, agents and employees had a duty to exercise that degree of care in providing services and facilities to [Eleanor] as required of similar nurses and facilities in similar circumstances." The negligence count alleged that defendant "by and through its owners, officers, managers, agents and employees, failed to provide to [Eleanor] that degree of care required of similar nurses and facilities in similar circumstances and was negligent in" (a) failing to properly attend and care for Eleanor, (b) failing to properly assist Eleanor, (c) failing to properly care for Eleanor's deteriorating mental status, (d) allowing pressure sores to develop, (e) allowing pressure sores to increase in severity and size, and (f) otherwise violating duties in Eleanor's "care, monitoring and attendance." The complaint alleged that as a direct and proximate result of one or more of defendant's negligent acts or omissions Eleanor suffered harm resulting in physical and mental injuries which resulted in her death and Eleanor and her next of kin suffered damages and pecuniary injuries.

¶ 9 Plaintiff attached a report under section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2012))[1] as an exhibit to his negligence counts from Shirley Daugherty, R.N., RAC-CT, CLCP, CLNC. Daugherty's report concludes that errors by Evergreen "breached the standard of care and caused Eleanor Groeller injury, damage, and harm, and ultimately death."

¶ 10 Plaintiff called Dr. Daniel Swagerty as an expert witness at trial. Swagerty testified that when an individual enters a nursing home, "they are going to get assessed by a number of different professionals. They need to have a medical assessment. Also, the nurses assess them, as do[es] the dietician, all the providers." Swagerty did testify that the nursing home violated the standard of care applicable to the nursing home in several respects. He stated the nursing

---

[1]"In any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint ***." 735 ILCS 5/2-622(a) (West 2012).

facility "failed to fully assess her, fully to provide the type of really high-touch type of approach, having nursing, social work, involved the doctor. [*sic*] They didn't even involve the attending physician around these issues. *** It would have only taken social work, physician, nursing to work together, and then individually to be able to provide her moral support, some psychological support. That would have been at the very minimum." One of the ways in which the nursing home violated the standard of care applicable to it, according to Swagerty's testimony, was by failing to turn her, failing to keep her dry, and dragging her across the sheets, which is how he testified her pressure ulcers developed.

¶ 11 Daugherty testified at the trial. When asked what her thoughts were after she was initially contacted and asked to review Eleanor's medical record, Daugherty stated that Eleanor's "needs were not met and the nursing staff had not followed the standard of care in ensuring that she had her–had proper nutrition to maintain her current status upon admission." Daugherty offered her opinion on the duties of a registered nurse in a nursing home regarding the delivery of treatment by dieticians, social workers, psychologists and psychiatrists. Plaintiff's counsel then asked Daugherty to describe what deviations from the standard of care she found from her review of pertinent documents. Daugherty testified in part that, "as a nurse, it is their duty and responsibility to ensure that–that if someone is refusing their meals, you've got to find out why and the nursing staff did not." Daugherty also testified that it would be a "nursing judgment" to make the decision to offer a resident, who was not eating, six small meals throughout the day as an alternative. She opined that the nurse in a nursing home is "the frontline caregiver and it is our responsibility to ensure that our residents are taken care of." Daugherty testified that a nurse can make observations to report to other medical disciplines when requesting care for a nursing home resident.

¶ 12 The trial court conducted a jury instruction conference at which plaintiff tendered an instruction on institutional negligence: Illinois Pattern Jury Instructions, Civil, No. 105.03.01 (2006) (hereinafter, IPI Civil (2006) No. 105.03.01). The instruction reads, in part, as follows:

"Negligence by a nursing home is the failure to do something that a reasonably careful nursing home would do, or the doing of something that a reasonably careful nursing home would not do, under circumstances similar to those shown by the evidence.

In deciding whether the defendant Evergreen Healthcare Center, LLC was negligent, you may consider opinion testimony from qualified witnesses, evidence of professional standards, evidence of policies and procedures, evidence of community practice, and other evidence presented in this case." IPI Civil (2006) No. 105.03.01.

¶ 13 Defendant objected and tendered a professional negligence instruction: Illinois Pattern Jury Instructions, Civil, No. 105.01 (2006) (hereinafter, IPI Civil (2006) No. 105.01). Defendant's instruction reads, in part, as follows:

" 'Professional negligence' by a nurse is the failure to do something that a reasonably careful nurse practicing in the same or similar localities as the nurse would do, or the doing of something that a reasonably careful nurse would not do, under circumstances similar to those shown by the evidence." IPI Civil (2006) No. 105.01.

¶ 14 The trial court initially ruled it would give the institutional negligence instruction, but after additional argument from the parties, the court decided it would give the professional negligence instruction as well.

- 4 -

¶ 15    The jury returned a verdict in favor of defendant. The trial court entered judgment on the verdict. The court then denied plaintiff's posttrial motion.

¶ 16    This appeal followed.

¶ 17                                        ANALYSIS

¶ 18    On appeal plaintiff argues the trial court committed reversible error when it gave conflicting instructions to the jury.

> "In Illinois, the parties are entitled to have the jury instructed on the issues presented, the principles of law to be applied, and the necessary facts to be proved to support its verdict. The decision to give or deny an instruction is within the trial court's discretion. The standard for determining an abuse of discretion is whether, taken as a whole, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law." *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002).

¶ 19    Further:

> "When the question is whether the applicable law was conveyed accurately, however, the issue is a question of law, and our standard of review is *de novo*. [Citation.]" *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 13.

¶ 20    Plaintiff argues the trial court erred in instructing the jury with regard to defendant's duty to Eleanor. "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another. [Citation.]" (Internal quotation marks omitted.) *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 295 (2000). "[I]n negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty." (Emphasis and internal quotation marks omitted.) *Id.*

> "In an ordinary negligence case, the standard of care required of a defendant is to act as would an ordinarily careful person or a reasonably prudent person. [Citation.] ***
>
> In contrast, in a professional negligence case, the standard of care required of a defendant is to act as would an ordinarily careful professional. [Citation.] Pursuant to this standard of care, professionals are expected to use the same degree of knowledge, skill and ability as an ordinarily careful professional would exercise under similar circumstances." (Internal quotation marks omitted.) *Jones*, 191 Ill. 2d at 295.

¶ 21    Under Illinois law, a hospital may be found liable in a medical negligence case under two separate and distinct theories: (1) liability for its own institutional negligence and (2) vicarious liability for medical negligence of its agents or employees. *Longnecker v. Loyola University Medical Center*, 383 Ill. App. 3d 874, 885 (2008). In institutional negligence cases our supreme court has acknowledged that hospitals have an independent duty to assume responsibility for the care of their patients. *Jones*, 191 Ill. 2d at 291 (citing *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326 (1965)). "Ordinarily, this duty is administrative or managerial in character." *Id.* (citing *Advincula v. United Blood Services*, 176 Ill. 2d 1, 28 (1996)). "To fulfill this duty, a hospital must act as would a reasonably careful hospital under the circumstances." (Internal quotation marks omitted.) *Id.* at 291-92 (quoting

- 5 -

*Advincula*, 176 Ill. 2d at 29). The hospital's liability is predicated on its own negligence, not the negligence of its physician-agent or employee. *Id.* at 292. See also *Advincula*, 176 Ill. 2d at 30 ("the standard of care applied to hospitals in cases based on their vicarious liability for the conduct of agent or employee medical professionals remains the standard applied to all professionals, *i.e.*, to use that same degree of knowledge, skill and ability as an ordinarily careful professional would exercise under similar circumstances").

¶ 22    The same character of institutional liability applicable to hospitals applies to nursing homes. Thus, negligence by a nursing home is "the failure to do something that a reasonably careful [nursing home] would do, or the doing of something that a reasonably careful [nursing home] would not do, under circumstances similar to those shown by the evidence." IPI Civil (2006) No. 105.03.01. Plaintiff has no dispute with this statement of the standard of care applicable to defendant; plaintiff's arguments focus on whether the trial court should have instructed the jury on the standard of care applicable to defendant's professional nurses. The trial court gave the jury both the institutional negligence instruction and the professional negligence instruction tendered by each party.[2]

¶ 23    A medical provider such as a hospital or nursing home may also be held responsible for the conduct of its agents or employees who are medical professionals under the doctrine of vicarious liability. *Advincula*, 176 Ill. 2d at 31. An "employer's vicarious liability extends to the negligent, willful, malicious, or even criminal acts of its employees when such acts are committed within the scope of the employment." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163-64 (2007). Where a medical provider is held responsible under a theory of vicarious liability for the conduct of a medical-professional agent or employee, the medical provider's conduct is measured against a professional standard of care. *Advincula*, 176 Ill. 2d at 31. Plaintiff argues the trial court committed two errors in instructing the jury. First plaintiff argues the trial court abdicated its responsibility to decide what the law is when it gave two conflicting instructions defining the standard of care applicable to defendant's conduct. Plaintiff's second argument on appeal is that the trial court erred in instructing the jury as to the wrong standard of care applicable to defendant's conduct.

¶ 24                        1. Trial Court's Duty to Instruct the Jury

¶ 25    Plaintiff argues that the instructions "confuse the nature of the defendant and contradict the nature of plaintiff's burden to prove the defendant was negligent." Plaintiff cites *People v. Jenkins*, 69 Ill. 2d 61, 66 (1977), for the general proposition that "it is the duty of the court to

---

[2]The instruction defendant tendered and the trial court gave also informed the jury that to determine what the standard of care required in this case, the jury must rely on "opinion testimony from qualified witnesses, evidence of professional standards, evidence of by-laws/rules regulations/policies/procedures, and other sources." Our supreme court held that this version of the instruction does not accurately state the law because the instruction does not reflect the necessity of expert testimony. *Studt*, 2011 IL 108182, ¶¶ 23, 28. However, reversal is only warranted if the error resulted in "serious prejudice" to the appellant's right to a fair trial. *Id.* ¶ 28. We do not find that plaintiff suffered serious prejudice from the trial court's error. Both parties presented expert testimony on what the standard of care for professional nurses required in this case and the jury found in favor of defendant. Thus, the inappropriate "expansiveness of the instruction could not have affected the outcome and therefore worked no prejudice." *Id.* ¶ 52 (Karmeier, J., specially concurring).

inform the jury as to the law." Further, it is the trial court's duty "to give the jury proper guidance, not to generate confusion." *Id.* The *Jenkins* court wrote as follows:

> "It is well established that the giving of contradictory instructions on an essential element in the case is prejudicial error, and is not cured by the fact that another instruction is correct. While it is true that an instruction may be inaccurate, and other instructions may remove this error, such cannot be so when the instructions are in direct conflict with one another, one stating the law correctly and the other erroneously." *Id.*

¶ 26    Plaintiff argues that the two instructions given in this case contradict in that "one instruction requires the jury to base its verdict on expert opinion testimony; the other permits it. [*sic*] One characterizes plaintiff's action as against a nurse; the other as against a nursing home." When the instructions are compared to each other on their face, plaintiff's former argument has some merit. See *Studt*, 2011 IL 108182, ¶ 23 ("The distinction between the evidence required to establish professional negligence versus institutional negligence, recognized and preserved by this court in cases like *Advincula* and *Jones*, has been completely eliminated by the 2006 IPIs."). However, plaintiff's latter argument ignores the fact that the defendant in a case of this type–a nursing home–can be found liable based on both its own negligence and the negligence of its nurse-agent.

¶ 27    In *Studt*, the hospital defendant in that case was defending against both "a professional negligence claim (vicarious liability for the alleged professional negligence of its emergency room doctors) and an institutional negligence claim (the alleged failure to assure adequate communication between its doctors)." *Id.* ¶ 29. The jury in that case was instructed on both theories. *Id.* ¶ 46 (Karmeier, J., specially concurring). Our supreme court held that even though the 2006 professional negligence IPI did not accurately state the law, the hospital defendant did not suffer prejudice. *Id.* ¶ 28 (majority opinion). The court found that "[e]vidence of the standard of care supporting both theories of recovery was introduced through expert testimony." *Id.* ¶ 29.

¶ 28    The concern in *Studt* was that the erroneous instruction created the possibility that a medical doctor could be found liable for professional negligence based only on the violation of a hospital rule or regulation. *Id.* ¶ 23. The court reasoned that the defendant hospital did not suffer prejudice from the erroneous instruction because although "the Hospital's rules and regulations for medical staff were also admitted into evidence, the rules and regulations were not held out as establishing the standard of care for emergency room physicians. The rules and regulations merely buttressed the expert testimony that patient care was compromised through the emergency room doctors' failure to communicate adequately with each other and the Hospital's failure to assure adequate communication. Reversal is not warranted." *Id.* ¶ 29.

¶ 29    In its appropriate context, plaintiff's argument fails because the instructions in this case are not contradictory but coextensive statements of the law defining the standard of care that must have been breached for defendant to be liable for Eleanor's injuries. None of plaintiff's authorities are contradictory to this finding.

¶ 30    In *Shehy v. Bober*, 78 Ill. App. 3d 1061, 1070 (1979), this court found the giving of two contradictory instructions constituted reversible error. There, one instruction given to the jury said that the law presumed that the brother of a child decedent suffered a pecuniary loss by reason of the death and the second instruction stated that there is no such presumption. *Id.* at 1069. There was no dispute that only one instruction correctly stated the applicable law. *Id.* at 1069 n.1. The *Bober* court also recognized that "instructions may supplement each other, but

each one must state the law correctly as far as it goes, and they should be in harmony, so that the jury will not be misled. The jury are not able to select from contradictory instructions one which correctly states the law. [Citations.]" (Internal quotation marks omitted.) *Id.* at 1070 (quoting *Bald v. Nuernberger*, 267 Ill. 616, 620 (1915)). The instructions at issue in *Bober* did not merely overlap and one incorrectly stated the law. In that circumstance "jury confusion as to the applicable law is virtually inevitable." *Id.* This case is different because here the two instructions do supplement each other and each one is a correct statement of the law.

¶ 31        The decision in *Endurance Paving Co. v. Pappas*, 117 Ill. App. 2d 81, 87-88 (1969), is similarly distinguishable. The *Pappas* court found that it was prejudicially erroneous to give the challenged instruction. *Id.* at 87. There, however, the challenged instruction contained an incorrect statement of the law, removed an issue from the case, was peremptory in form, failed to contain all the facts, was not complete within itself, and could not be cured by other instructions in the series. *Id.* at 88. So too did the instruction in *Gordon v. Checker Taxi Co.*, 334 Ill. App. 313, 322 (1948), contain an incorrect statement of the applicable law. The challenged instruction in *Gordon* informed the jury that the plaintiff had the burden to prove that the defendant, a common carrier, "failed to exercise reasonable care at the time of the alleged occurrence." *Id.* at 321. The *Gordon* court noted that the duty on the part of a carrier toward its passengers is to exercise the highest degree of care instead of reasonable care. *Id.* at 322. The *Gordon* court found that the error, "when combined with the prejudicial conduct of counsel referred to [in that case], constitutes reversible error." *Id.*

¶ 32        Plaintiff's reliance on these cases is misplaced because the challenged instruction in this case is a correct statement of the law applicable in this case and suffers none of the other defects found by the other courts. The jury was not misled as to the standard of care applicable to the nursing home. The instruction states that the professional negligence standard of care is applicable to its nurses and the instructions viewed as a whole properly instruct the jury as to the standard of care applicable to the nursing home. Plaintiff's argument the trial court committed reversible error in giving both the institutional negligence and professional negligence instructions fails because the instructions did not mislead the jury and fairly and correctly stated the law where the evidence at trial supported a theory that defendant was liable because either the institution or its professional employees were negligent or both.

¶ 33        We find the Second District's decision in *Ellig v. Delnor Community Hospital*, 237 Ill. App. 3d 396 (1992), unpersuasive. There, the court held that the trial court committed error by instructing the jury on theories of negligence based on vicarious liability as well as institutional negligence. *Id.* at 413. The instructions in that case differed from the instructions in this case in crucial respects. The institutional negligence instruction in that case informed the jury that the hospital had a duty to exercise ordinary care and that ordinary care means "the care a reasonably careful person would use under circumstances similar to those shown by the evidence." (Internal quotation marks omitted.) *Id.* at 411-12. The *Ellig* court found that these instructions in combination "essentially instructed that professional negligence results from a failure to exercise the care a reasonably careful person (layperson) would use under circumstances similar to those shown by the evidence." (Emphases omitted.) *Id.* at 412. The court found that "ordinary care should have been defined in terms of the care a reasonably careful, similarly situated institution would exercise under circumstances similar to those shown by the evidence." *Id.* That was done in this case.

- 8 -

¶ 34     The *Ellig* court's primary concern was that "the instructions, as they were given in the present case, could create a situation where the professional negligence of the defendant/hospital could be determined by looking to the actions of a layperson." *Id.* at 413. The *Ellig* court went on to find that a "similar source of jury confusion" could have resulted from the trial court's also instructing the jury as to professional negligence. *Id.* The court found:

> "Prejudice also resulted from the failure to provide the jury with instructions that clearly identified the theories of plaintiffs' requested relief. The first asserts defendant's liability based upon its administrative failure ***. The second theory asserts that defendant was vicariously liable through the actions of its medical staff. When different theories of relief are requested, the jury should be more clearly informed about which standards apply to which theory of recovery so that they are not misled." *Id.* at 414.

¶ 35     We find *Ellig* distinguishable because in this case, the jury was more clearly informed about which standard applied to which theory of recovery. Unlike in *Ellig*, the jury was not led to believe that the institution was under two distinctly different duties. *Id.* at 413. The instruction in *Ellig* read as follows:

> "In providing professional services to [decedents], *hospital personnel* must possess and apply the knowledge and use the skill and care ordinarily used by reasonably well-qualified *hospital personnel* practicing under the circumstances similar to those shown by the evidence." (Emphases added and internal quotation marks omitted.) *Id.* at 412.

¶ 36     In this case, the professional negligence instruction specifically informed the jury of the standard of care applicable to nurses. The potential for confusion between the evidence of the institution's negligence and the evidence of the nurses' negligence was thereby eliminated. The court has recognized that institutions such as defendant are "an amalgam of many individuals not all of whom are licensed medical practitioners *** [and] it is clear that at times a hospital functions far beyond the narrow sphere of medical practice." (Internal quotation marks omitted.) *Advincula*, 176 Ill. 2d at 33. The instruction in *Ellig* failed to recognize the distinction between those different functions and fostered confusion as to the standard of care applicable to each. Here, the instruction was sufficiently specific to avoid such confusion while giving credence to the different theories of liability to which defendant is indisputably subjected for negligence toward its residents: both institutional and professional. See *Longnecker*, 383 Ill. App. 3d at 885 ("In medical negligence cases, a hospital may face liability under two separate and distinct theories: (1) vicarious liability for the medical negligence of its agents or employees; and (2) liability for its own institutional negligence."). We find the use of both instructions was not inherently misleading in this case.

¶ 37     Based on testimony by plaintiff's nurse expert, the jury could have found that defendant's nurses violated their duty to Eleanor and, based on that finding as to defendant's nurses, found defendant liable for her injuries under the Nursing Home Care Act. If defendant's liability could be based on its nurses' breach of their duties, then defendant was entitled to have the jury instructed on its nurses' standard of care. Plaintiff's assertion that nowhere in any of plaintiff's experts' testimony is the "nursing standard of care" mentioned or described is based on a myopic view of the record. Daugherty testified repeatedly about what defendant's nurses were required to do. She described the nurses as the "frontline" that should have triggered the

institutional response plaintiff complains was lacking. She also opined that it would be a "nursing judgment" to alter or to suggest altering Eleanor's meals. We cannot find that the evidence does not support a theory of professional negligence in this case. Therefore, giving the professional negligence instruction was not an abuse of discretion.

¶ 38 Plaintiff's second argument on appeal challenges the relevance of defendant's nurses' alleged professional negligence in this case and, thus, the propriety of instructing the jury as to same.

¶ 39                          2. Propriety of Professional Negligence Instruction

¶ 40 Plaintiff's second argument is premised on plaintiff's assertion that "*respondeat superior* was not an element of plaintiff['s] proof." From that premise plaintiff argues that the trial court committed reversible error in giving an instruction for a different kind of defendant with substantially different standards of care. Specifically, plaintiff asserts that the fact defendant is a corporation that acts through its employees, and that some of these employees are nurses, "does not transform a nursing home case into a 'professional negligence' matter." Nor, plaintiff argues, does the fact that evidence of the institution's negligence comes from doctors and nurses convert a claim of institutional negligence into a professional negligence claim. Plaintiff further asserts that his experts' testimony on the nursing home standard of care "does not entitle the defendant to recast the nature of plaintiff's case and for the jury to be instructed with inapplicable jury instructions."

> "Each party has the right to have the jury clearly and fairly instructed upon each theory that was supported by the evidence. [Citation.] It is within the trial court's discretion to determine what issues are raised by the evidence and whether an instruction should be given. [Citation.] To determine the propriety of a tendered instruction, we consider whether the jury was fairly, fully, and comprehensively informed as to the relevant principles considering the instructions as a whole. [Citation.]" (Internal quotation marks omitted.) *Brax v. Kennedy*, 363 Ill. App. 3d 343, 351 (2005).

¶ 41 Plaintiff argues that an institution such as defendant has a direct institutional duty to the patient that does not implicate individual standards of care. That statement is factually correct on its face. *Jones*, 191 Ill. 2d at 298 ("the tort of institutional negligence 'does not encompass, whatsoever, a hospital's responsibility for the conduct of its *** medical professionals' " (quoting *Advincula*, 176 Ill. 2d at 31)). In the context of plaintiff's argument that the trial court erred in instructing the jury as to the professional negligence standard of care, however, plaintiff's statement is misleading. While the institutional standard of care is separate and distinct from the professional standard of care, based on the evidence in this case plaintiff exposed defendant to liability for a breach of either standard of care. *Longnecker*, 383 Ill. App. 3d at 885. Plaintiff's evidence at trial exposed defendant to liability for its nurses' alleged breach of the standard of care applicable to them regardless of whether plaintiff's complaint can be read to specifically allege professional negligence or not. See *id.* at 888 (rejecting defendant's claim institutional negligence claim was time barred where allegations in complaint put defendant on notice of institutional negligence theory of liability despite fact complaint did not expressly assert an institutional negligence claim). Thus, plaintiff's attempt to distinguish *Studt* on the grounds that in that case "the plaintiff explicitly sought to hold the hospital vicariously liable for the negligence of its emergency room physician" must fail.

¶ 42    Plaintiff argues he sought recovery for institutional negligence and "plaintiffs are masters of their complaint and are entitled to proceed under whichever theory they decide, so long as the evidence supports such a theory." *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 718 (1998). The decision in *Reed* does not suggest plaintiff suffered prejudice from the trial court's instructions to the jury. In *Reed*, the plaintiffs requested a general negligence instruction, and the defendant requested a premises liability instruction that required the plaintiffs to prove that the defendant had actual or constructive knowledge of a dangerous condition on the defendant's property. *Id.* at 714. The *Reed* court held that the trial court abused its discretion in *refusing* the plaintiffs' instruction and requiring them to prove "an additional and unnecessary element to their cause of action." *Id.* at 718. The plaintiffs' complaint in *Reed* seemed to allege both an ordinary negligence cause of action and a premises liability cause of action. *Id.* at 717. The *Reed* court found that the plaintiffs presented evidence to support their general negligence theory and were entitled to proceed with that theory. *Id.* at 718.

¶ 43    The court's decision in *Smart v. City of Chicago*, 2013 IL App (1st) 120901, is similarly distinguishable. In *Smart*, this court held that it would have been an abuse of discretion to give the defendant's tendered premises liability instruction where the plaintiff's complaint sounded in negligence and not premises liability. *Id.* ¶¶ 47, 55. The basis of the defendant's contention that the trial court should have given the premises liability instruction was that the defendant was not engaged in an "activity" on the property where the plaintiff was injured and therefore the plaintiff was improperly relieved of the burden of proving all of the elements necessary to impose liability on a landowner for an unreasonably dangerous condition on the landowner's property. *Id.* ¶¶ 46, 50. This court rejected the defendant's arguments finding that it was "uncontroverted that the City's conduct created the hazard that caused Smart's injuries." *Id.* ¶ 55. The Notes on Use of the rejected instruction in that case stated that " '[i]f the action alleges that an activity on the premises caused the injury *** use IPI 20.01 and IPI B10.03,' " which is what the trial court did. (Emphases omitted.) *Id.* ¶ 49 (quoting Illinois Pattern Jury Instructions, Civil, No. 120.08, Notes on Use (2006)). Thus, this court held that "[t]he trial court properly adhered to the guidance dictated by the Notes on Use for IPI Civil (2006) No. 120.02 and IPI Civil (2006) No. 120.08 and did not err in tendering duty and burden of proof instructions applicable to general negligence cases." *Id.* ¶ 57.

¶ 44    In *Smart*, the proffered instruction did not apply to the plaintiff's claim and, like *Reed*, giving the requested instruction would have required the plaintiff to prove "an additional and unnecessary element to their cause of action." *Reed*, 298 Ill. App. 3d at 718. In this case, the trial court's instructions did not prevent plaintiff from proceeding under his chosen theory of institutional negligence. The court in this case did not refuse the institutional negligence instruction; but the evidence adduced at trial also supported a theory of defendant's liability based on the professional negligence of its staff. Defendant was entitled to have the jury instructed on those principles of law. *Brax*, 363 Ill. App. 3d at 351.

¶ 45    We interpret plaintiff's argument that the conduct of which he complained "does not implicate medical judgment of defendant's staff, but rather the failure to deliver all the services and resources [defendant] represented were available," and, therefore, "instructing the jury on the professional standard of care was error," as an attempt to preempt our finding that his evidence encompassed defendant's potential vicarious liability for its nurses' professional negligence. In support, plaintiff cites *Advincula*, 176 Ill. 2d at 28, in which our supreme court wrote that it has "recognized a new and independent duty of hospitals to review and supervise

- 11 -

the treatment of their patients that is administrative or managerial in character." *Advincula*, 176 Ill. 2d at 28. The *Advincula* court cited *Johnson v. St. Bernard Hospital*, 79 Ill. App. 3d 709, 718 (1979), for its holding that the duty imposed on hospitals in this context does not require medical expertise but administrative expertise to enforce rules and regulations adopted to ensure a smoothly run hospital and adequate patient care. *Advincula*, 176 Ill. 2d at 28-29 (quoting *St. Bernard Hospital*, 79 Ill. App. 3d at 718).

¶ 46     Nothing in *Advincula* diminishes the duality of defendant's potential liability. The *Advincula* court held that an institution fulfilling its individual duty "must conform to the legal standard of 'reasonable conduct' in light of the apparent risk" but that the standard of care in cases based on vicarious liability for the conduct of agent or employee medical professionals remains the standard applied to all professionals. *Advincula*, 176 Ill. 2d at 29-30. On appeal, plaintiff has not discussed or suggested that the evidence did not support the theory that defendant was potentially vicariously liable for the professional negligence of its nurses and for that reason defendant was not entitled to its instruction. Compare *Myers v. Heritage Enterprises, Inc.*, 354 Ill. App. 3d 241, 248 (2004) (holding trial court abused its discretion by instructing the jury on professional negligence rather than ordinary negligence where conduct resulting in injury was performed solely by certified nursing assistants and finding that given the minimal training requirements and that nursing assistants provide primarily personal care the position is not a professional position requiring the professional negligence instruction). There is no requirement that the professional employee be named a party in a claim against the institution based on vicarious liability. See generally *Studt*, 2011 IL 108182, ¶ 5; *McCottrell v. City of Chicago*, 135 Ill. App. 3d 517, 519 (1985) ("the servant is not a necessary party in an action against the master").

¶ 47     Defendant had an independent right to have the jury fully and properly instructed on each theory of liability supported by the evidence. *Brax*, 363 Ill. App. 3d at 351-52. See also *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 101 (1995) ("All that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction." (Internal quotation marks omitted.) (quoting *Lowe v. Norfolk & Western Ry. Co.*, 124 Ill. App. 3d 80, 118 (1984))). We find no error in the trial court's giving of dual instructions on institutional negligence and professional negligence. Accordingly, the trial court's judgment on the jury's verdict in favor of defendant is affirmed.

¶ 48                                   CONCLUSION

¶ 49     For the foregoing reasons, the trial court's judgment on the jury's verdict in favor of defendant is affirmed.

¶ 50     Affirmed.